**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **In re JOSEPH ALAN PRATT and** | § | |
| **AMY LYNN PRATT,** | § | |
| | § | |
| **Debtors.** | § | |
| | § | |
| | § | |
| **EDUCATIONAL CREDIT** | § | |
| **MANAGEMENT CORPORATION,** | § | |
| | § | |
| **Appellant,** | § | |
| | § | **CIVIL ACTION NO. V-06-18** |
| **v.** | § | |
| | § | **(ADV. NO. 05-6006)** |
| **AMY LYNN PRATT,** | § | |
| | § | |
| **Appellee.** | § | |

**ORDER**

Appellant Educational Credit Management Corporation ("ECMC") appeals from the final order of the United States Bankruptcy Court in the Southern District of Texas ("Bankruptcy Court") issued in Adversary Action No. 05-06006.  Having considered the parties' arguments, the applicable law, and the Bankruptcy Court's rulings, the Bankruptcy Court's decision is REVERSED.

**Factual and Procedural Background**

Amy Pratt received a Bachelor of Science degree in human development and family studies with a minor in psychology from the University of Utah in 2001.  Amy took out federal loans to finance her education, and as of the date of trial, owed approximately $37,000 in student loan debt to ECMC. Since graduating college, she has continually sought deferments based on her unemployment status, and has paid nothing on her student loan debt.  Amy testified it was her intent to stay in deferment status until her children were old enough to attend school before beginning to repay her loans.  In fact, the Pratts' primary purpose in Amy attending school was for her to gain

the tools and knowledge needed to raise a family.  Her monthly consolidated loan payment was $182.20.  Amy testified she looked into the William D. Ford Federal Loan Consolidation Program for repaying her student loans, but decided not pursue that option further until she learned if her loans would be discharged.

Amy has never worked outside the home since graduating from college.  According to her testimony, she has not applied for a position since 2000, with the exception of one application to Grandy's restaurant.  At the time Amy and her husband filed for bankruptcy, they resided in Victoria, Texas, but have since moved back to Utah where her husband accepted a more lucrative engineering position.  Amy has no health problems and is admittedly capable of obtaining employment outside the home. She was 32 years old at the time of trial.

Joseph Pratt, Amy's husband, whose loan debt was also discharged[1] in the same proceeding was 31 years old at the time of trial.  He graduated from the University of Utah in 2000 with a bachelor's degree in chemical engineering.  Joseph has been employed steadily since his graduation in various engineering positions.  At the time of trial, he was a field engineer at Kinder/Morgan, earning $52,000 annually.  Since trial, Joseph accepted a position in Utah at Kern River Gas Transmission Company, earning $54,000 annually.  His current position also offers an annual discretionary bonus opportunity, averaging 10% of his salary.  The position in Utah is an engineer II position, a step up from his former entry level engineer position, which will make him more

---

[1] The discharge of Joseph Pratt's loan was not appealed, so this Court is not considering the discharge of his debt; however, because the Bankruptcy Court took into account the overall family situation in determining whether the Pratts satisfied the undue hardship test, this Court will likewise consider the overall financial situation of the Pratts. *See In re Nary*, 253 B.R. 752, 763 (N.D. Tex. 2000) (finding "it is proper to consider the income of a non-borrower spouse" for purposes of analyzing undue hardship).

marketable in the future.  Joseph's student loans, in the amount of approximately $60,000, were discharged by the Bankruptcy Court.  He also has no health problems.  The Pratts have six children, ranging in ages from several months[2] to 12 years old.  Three of the Pratt children were born before Amy graduated from college.  All of the children are healthy.

On November 15, 2004, the Pratts filed a bankruptcy petition under Chapter 7 of  United States Bankruptcy Code Title 11.  The Pratts were discharged as joint debtors on March 16, 2005. On February 22, 2005, the Pratts filed this adversary proceeding seeking to discharge their student loan debt.  Having heard testimony on the issues in the case, the Bankruptcy Court found that the Pratts had satisfied the undue hardship test.  The Court found that supporting six children would preclude the Pratts from maintaining a minimal standard of living if they were forced to repay their student loan debt. Further, the Court concluded the Pratts had proven that the "additional circumstance" of supporting a family of eight would continue to consume any future earnings during the loan repayment period.  Finally, based on the facts that Joseph had made every attempt to maximize his income and the family had made every effort to minimize their expenses, the Bankruptcy Court determined this was sufficient to show that the debtors had made a good faith effort to repay their loans.  Ultimately, the Bankruptcy Court found that if the Pratts were forced to repay their student loan debt, an undue hardship would be placed on them within the meaning of 11 U.S.C. § 523(a)(8).  The Bankruptcy Court did not issue a written opinion, but issued its findings of fact orally at the conclusion of the adversary proceeding on August 2, 2005 pursuant to Bankruptcy Rule 7052.

ECMC now appeals from the Bankruptcy Court's ruling.  ECMC has presented four issues

---

[2] Amy Pratt had their sixth child following the adversary proceeding.

for appeal.  Basically, ECMC challenges the Bankruptcy Court's findings regarding each of the three prongs of the *Brunner* undue hardship test.  ECMC argues the Bankrupcty Court erred in its application of the prongs to the facts of this case.  ECMC also contends the Bankruptcy Court's ultimate conclusion that repaying the student loan debt would place an undue hardship on Amy Pratt is clearly erroneous.

## Standard of Review

This Court has jurisdiction to hear appeals from final judgments, orders, and decrees of a bankruptcy court. 28 U.S.C. § 158(a)(1).  This Court reviews a bankruptcy court's factual determinations for clear error.  FED. R. BANKR. P. 8013; *Haber Oil Co. v. Swinehart* (*In re Haber Oil Co.*), 12 F.3d 426, 434 (5th Cir. 1994).  The Court will reverse a factual determination if, considering all the evidence, it is left with a definite and firm conviction that a mistake was made. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Haber Oil Co.*, 12 F.3d at 434. Questions of law are reviewed de novo.  *Feld v. Zale Corp.* (*In re Zale Corp.*), 62 F.3d 746, 751 (5th Cir. 1995); *Chiasson v. J. Louis Metherne and Assocs.* (*In re Oxford Mgmt., Inc.*), 4 F.3d 1329, 1333 (5th Cir. 1993).  The dischargeability decision is a question of law subject to de novo review.  *U.S. Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89, 91 (5th Cir. 2003) (concluding "[t]he decision to discharge [] debts represents a conclusion regarding the legal effect of the bankruptcy court's factual findings").

## Discussion

Amy Pratt seeks a discharge of her student loan debt pursuant to 11 U.S.C. § 727, which grants a debtor a discharge for debts that arose before the order of relief, except as provided in 11 U.S.C. § 523.  Section 523 states in relevant part:

4

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt--
> ...
>
> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8); *accord Murphy v. Pa. Higher Educ. Assistance Agency* (*In re Murphy*), 282 F.3d 868, 870 (5th Cir. 2002). The parties do not appear to dispute that the loan to ECMC qualifies as a loan described in § 523(a)(8), so Amy Pratt may only be discharged from her obligation on this debt if she can show that failure to discharge the debt will cause "undue hardship" on her and her dependents.

The Bankruptcy Code does not define "undue hardship," but the Fifth Circuit has adopted the framework for analyzing what constitutes "undue hardship" established in *Brunner v. N.Y. State Higher Educ. Svcs. Corp.*, 831 F.2d 395 (2d Cir. 1987). *U.S. Dep't of Educ. v. Gerhardt* (*In re Gerhardt*), 348 F.3d 89 (5th Cir. 2003). Accordingly, this Court will apply the *Brunner* undue hardship test in the instant appeal.

The *Brunner* court held that in order to meet the burden of showing "undue hardship," a debtor is required to make a three part showing:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for [herself and her] dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Brunner*, 831 F.2d at 396; *Gerhardt*, 348 F.3d at 91. The burden of establishing undue hardship rests on the debtor. *In re Roberson*, 999 F.2d 1132, 1135–36 (7th Cir. 1993). The debtor's failure

to establish each of these three prongs defeats her claim for discharge. *Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1307 (10th Cir. 2004).

All of the issues presented by ECMC on appeal directly challenge the Bankruptcy Court's application of the *Brunner* framework; therefore, the Court will address each prong in turn in order to determine if the Bankrupcty Court erred in its application of the undue hardship test to the facts of this case.

However, before the Court addresses the prongs of *Brunner*, a review of the legislative purpose and intent underlying § 523(a)(8) will assist in guiding this Court's analysis and providing relevant background. The Court must give due regard to Congress' mandate imposing stringent standards on discharging federally funded student debt. The legislative history indicates that generally student loans are not dischargeable. *Brunner*, 831 F.2d at 396. Student loans are treated differently under the dischargeability rules of the Bankruptcy Code because the federal government loans students money despite the borrowers' credit worthiness. *Roberson*, 999 F.2d at 1135. "Indeed, without the program, many people would never receive any higher education because their credit risks would preclude them from obtaining private commercial loans." *Frushour v. Educ. Credit Mgmt. Corp. (In re Frushour)*, 433 F.3d 393, 399 (4th Cir. 2005). This service by the federal government justifies the stricter undue hardship standard for dischargeability, which must be more than usual hardship suffered by all bankruptcy petitioners. *Id.* Congress was particularly concerned about recent graduates declaring bankruptcy as a way to avoid repayment of student loans on the eve of lucrative careers. *Speer v. Educ. Credit Mgmt. Corp. (In re Speer)*, 272 B.R. 186, 191 (Bankr. W.D. Tex. 2001); *In re Pelkowski*, 990 F.2d 737, 743 (3d Cir. 1993) ("Congress enacted § 523(a)(8) in an effort to prevent abuses in and protect the solvency of educational loan programs.").

6

Specifically, the *Brunner* test was established to protect "the financial integrity of the student loan program by prohibiting debtors who have obtained the substantial benefits of an education funded by taxpayer dollars to dismiss their obligation merely because repayment of the borrowed funds would require some major personal and financial sacrifices." *Pa. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995).  With these general principles in mind, the Court will now address the findings in this case.

### A.      Minimal Standard of Living

ECMC contends the Bankruptcy Court erred in finding that Amy Pratt could not maintain a minimal standard of living if forced to repay her student loans because the Pratts have failed to both minimize their expenses and maximize their income.  ECMC maintains that during the time Amy should have been repaying her student loans, the Pratt family voluntarily assumed other debt, including a $300 per month payment to Amy's mother for credit card charges[3] and a $558.39 per month payment for a new 2005 Chevrolet Suburban.  ECMC claims the purchase of a new Suburban was unnecessary because the Pratts had a 1996 Dodge Caravan Minivan, which was given to them for their use.  ECMC reasons that this decision demonstrates that the Pratts were not minimizing their expenses, as the projected repairs needed on the Caravan would have only cost $1,200. Further, ECMC criticizes Amy for not pursuing employment outside the home.  Finally, ECMC challenges the $508 per month expense that the Pratts tithe to their church.  The Bankruptcy Court reduced this amount by $136, allowing $372 tithing to be considered as a monthly expense for

---

[3] The Bankruptcy Court did not include this amount in the debtors' monthly expenses, because the Judge believed they could not afford this expense.  This Court will likewise disregard this expense because it is not a reasonably necessary living expense, and further finds that the Bankruptcy Court's ruling regarding this expense is not clearly erroneous.

purposes of the undue hardship analysis.

The Pratts testified that with their income tax refund and any bonuses earned by Joseph Pratt, based on their listed monthly expenditures, they would be able to maintain a minimal standard of living if they did not have to repay their loans. Assuming the barest expenses, eliminating the $300 for payments to Amy's mother and reducing the tithing payment to $372, the Pratt's household monthly expenditures amount to $3,942.32 and their total monthly income is approximately $4,033.33. This leaves the Pratts with a monthly surplus of approximately $91. However, the Bankruptcy Court found any surplus in this balance-sheet income is probably illusory.

In this respect, the Bankruptcy Court's factual findings are not clearly erroneous. First, although the Pratts' monthly income exceeded their monthly expenses by $91, this Court agrees that this surplus is de minimus. This surplus would not even cover the monthly student loan payment and allows for very little flexibility in the Pratts' budget for rising costs or unexpected expenses. Second, the Bankruptcy Court reduced the amount of tithing to comport with the recent amendments made by the Religious Liberty and Charitable Donation Protection Act ("RLCDPA") to the Bankruptcy Code, allowing 15% of income to be allocated for tithing when calculating disposable income under Chapter 13 of the Bankruptcy Code. *See* 11 U.S.C. § 1325 ; *see also* 11 U.S.C. § 548(a)(2) (amended by the RLCDPA to prevent a bankruptcy trustee from avoiding any charitable contributions that do not exceed 15% of a debtor's gross annual income). As there is no clear authority on whether tithing is a valid expense for purposes of the undue hardship analysis, the Court does not find clear error. *See Fulbright v. U.S. Dep't of Educ.* (*In re Fulbright*), 319 B.R. 650, 658–59 (D. Mont. 2005) (collecting cases discussing the divergence of opinion on the courts regarding tithing in the undue hardship context). Next, ECMC argues at length about the Pratts'

8

decision to purchase a new Suburban.  While the Pratts could have chosen to make further repairs to the Caravan, it was not unreasonable for the Pratts to choose to purchase a newer, more reliable vehicle equipped to transport a family of eight. Further, the Bankruptcy Court was not clearly erroneous in accepting Amy Pratt's argument that obtaining a job currently would result in no net gain, as the cost of day care expenses would consume the bulk of any income she would make. Given the Pratts' current financial situation, this Court does not find clear error in the Bankruptcy Court's ruling that the Pratts are unable to maintain a minimal standard of living if forced to repay Amy's student loan obligations.  While ECMC may disagree with the Bankruptcy Court's findings on certain of the Pratts' expenses, this is not enough for the Bankruptcy Court's findings to be clearly erroneous.

### B.    Additional Circumstances

In addition to looking at the debtor's present financial circumstances, the court must also consider the debtor's future prospects.  The second prong of the *Brunner* test asks if "additional circumstances exist indicating that this [current] state of affairs is likely to persist" for a significant portion of the repayment period. *Gerhardt,* 348 F.3d at 92. Stated differently, the court must consider whether there is a likelihood that the debtor's financial situation will improve sufficiently to permit the debtor to repay the loans, considering the debtor's age, education, work history, health, assets, ability to obtain a higher paying job or reduce expenses, and other circumstances.  *Nys v. Educ. Credit Mgmt. Corp. (In re Nys)*, 308 B.R. 436, 442–44 (9th Cir. 2004). "Additional circumstances" include "circumstances that impacted on the debtor's future earning potential but which [were] either not present when the debtor[] applied for the loans or [have] since been exacerbated." *Gerhardt*,  348 F.3d at 92 (quoting *In re Roach*, 288 B.R. 437, 445 (Bankr. E.D. La.

2003)).  This "additional circumstances" element is meant to be a demanding requirement.  *Id.* n.2 (citing examples of "additional circumstances," including "psychiatric problems, lack of usable job skills, and severely limited education" (quoting *Roach*, 288 B.R. at 445)).  Thus, proving that the debtor is "currently in financial straits" is not sufficient.  Instead, the debtor must specifically prove "a total incapacity . . . in the future to pay [her] debts for reasons not within [her] control."  *Id.* (quoting *In re Faish*, 72 F.3d 298, 307 (3d Cir. 1995)); *Nary v. The Complete Source* (*In re Nary*), 253 B.R. 752, 761 (N.D. Tex. 2000) ("Courts universally require more than temporary financial adversity and typically stop short of utter hopelessness.").  It is the debtor's continuing inability to pay over an extended period of time that distinguishes "undue hardship" from mere "garden-variety hardship," which presumably all bankruptcy petitioners are experiencing.  *Brunner*, 831 F.2d at 396.

Unlike the Bankruptcy Court, this Court does not believe that Amy Pratt has satisfied her burden under the second prong of *Brunner*.  The Court finds several facts which preclude Amy Pratt from demonstrating that additional circumstances exist that will prevent her from paying on her student loan obligation for a significant portion of the repayment period.  Undoubtedly caring for six children is a heavy burden, but this was a voluntary decision made by the Pratts with full knowledge of their financial obligations and the additional financial responsibilities that accompany having more children.  Specifically, the Pratts decided to have three more children after obtaining the loans and agreeing to the repayment obligations.  *See Brightful v. Pa. Higher Educ. Assistance Agency* (*In re Brightful*), 267 F.3d 324, 331 (3d Cir. 2001) (stating "when a student loan borrower accepts money from the government, she strikes a bargain.  And '[l]ike all bargains, it entails risk.  It is for each student individually to decide whether the risks of future hardship outweigh the potential benefits of a deferred-payment education.'" (citing *In re Brunner*, 46 B.R. 752, 756

10

(S.D.N.Y. 1985))).  Although it is certainly Amy Pratt's right to choose the size of her family, her decision to have a large family does not justify discharging her student loan obligation.  She voluntarily took out the loans and agreed to the repayment terms, all the while knowing the heavy financial burden of supporting a large family.

Further, this is a young, educated, healthy couple at the beginning of their respective career paths and with almost certain income increases.  Amy Pratt's student loans will enable her to earn a substantially greater income over her working life than she otherwise would have had she not earned a bachelor's degree.  She has currently chosen to forfeit her earning potential to stay at home with her children, but this is not her only option and it will not persist indefinitely.  *See Gerhardt,* 348 F.3d at 93 (citing *In re Grigas*, 252 B.R. 866, 875 (Bankr. D.N.H.2000) for the proposition that "a debtor could not satisfy the second *Brunner* prong when financial distress was self-imposed").  Amy's decision to have a large family cannot excuse her failure to supplement her income so that she can meet voluntarily incurred financial obligations.  Further, as the younger children reach school age, this will make her available to work and eliminate any prohibitive child care costs.  Also, as the older children reach the age of majority, the Pratts will have even less strain on their family budget.  The older children can also relieve Amy from all the child care responsibilities, allowing her to seek at least part-time employment.  These changes in the Pratt household will occur within 5–6 years.  Finally, the Pratts have extended family in Utah, which may limit the need for daycare or make it completely unnecessary.

Joseph Pratt's increased income and higher position also indicate that the Pratts' present situation will not persist over time. Since beginning his career in 2000, he has continually seen increases in his salary and the record supports the finding that his salary will continue to increase

commensurate with his experience.  At his current position, he is also eligible for annual bonuses, which could potentially provide another $5,400 in income, less taxes, for the Pratts.  Further, Joseph's $60,000 student loan debt was discharged with no appeal, freeing up his loan payment of approximately $185 per month.  This couple is college-educated with many working years still ahead of them.  The evidence of the Pratts' abilities and future prospects do not support a finding of hopelessness.  Amy is certainly capable of being gainfully employed, and her future prospects for employment are not limited.  Therefore, considering that the debtor's income should increase and her expenses should decrease in the near future, the Court concludes that there are not additional circumstances justifying a discharge of this student loan.[4]  This Court finds that the Bankruptcy Court's conclusion of law related to the second prong of *Brunner* on these facts is erroneous.

### C.    Good Faith

Although the inquiry could stop at the second prong, the Court will address Amy Pratt's good faith efforts to repay her loans given the extensive arguments propounded by both sides.  The final prong of *Brunner* requires the court to consider whether "the debtor has made good faith efforts to repay the loans."  *Brunner*, 831 F.2d at 396.  The court must examine the debtor's "efforts to obtain employment, maximize income, and minimize expenses" to enable the debtor to make

---

[4]  A review of other cases where the court refused discharge highlight the rarity of meeting the "additional circumstances" prong: *In re Aldrete*, 412 F.3d 1200, 1203, 1206 (10th Cir. 2005) (no undue hardship on debt of $78,000 for debtors with three children and low-paying jobs); *Oyler v. Educ. Credit Mgmt. Corp.*, 397 F.3d 382, 384, 386 (6th Cir. 2004) (no undue hardship for 48 year old debtor with medical problems with three children and $10,000 annual income); *Brightful*, 267 F.3d at 326, 329–31 (no undue hardship for debtor who had one dependent, even though she was forced to live with her sister, had no college degree, and was "emotionally unstable" with "glaring psychiatric problems"); *In re Salyer*, 348 B.R. 66, 69 (Bankr. M.D. La. 2006) (no undue hardship for debtors who with disabled triplets making an annual salary of $28,000).  Comparing these debtors' situations to the facts of this case makes very clear that the Pratt's circumstances do not warrant discharge.

payments.  *In re Frushour*, 433 F.3d 393, 402 (4th Cir. 2005).  A debtor's effort to seek out loan

consolidation options is also an important indicator of good faith.  *Id.*; *Aldrete v. Educ. Credit Mgmt.*

*Corp.*, 412 F.3d 1200, 1206 (10th Cir. 2005).  Although it is not dispositive, it demonstrates that the

debtor takes her loan obligations seriously, and is doing her utmost to repay them despite her

unfortunate circumstances.  *Frushour*, 433 F.3d at 402.  For example, the William D. Ford Program

offers five different repayment plans to student loan borrowers unable to meet their obligations.  34

C.F.R. § 685.208.  Among these, the Income Contingent Repayment Plan ("ICRP") allows reduced

student loan payments based on the federal poverty guidelines, the borrower's income, the

outstanding loan amount, and family size.  *Id.* § 685.209.  The debtor continues to make payments

contingent on their income for 25 years, at which time the remaining debt is cancelled.  *Id.*

        In the instant case, Amy Pratt did not apply for this program, but instead chose to wait and

see if her debt would be discharged.  Although the Court does not consider this a decision made in

bad faith, it does indicate that Amy did not seriously consider or pursue the options available to her

which would reduce her payment.  Also, Amy made no payments toward her loan.  *In re Nary*, 253

B.R. 752, 768 (N.D. Tex. 2000) ("[A] lack of payment does not by itself preclude a good faith

finding."(citations omitted)).  While this fact is also not dispositive, Amy's stated intention was to

defer any payment on her debt until her children were in school, showing a deliberate decision to

avoid making payments.  ECMC argues that the Bankruptcy Court failed to make a finding about

Amy's specific good faith efforts to repay her student loans, but instead considered Joseph's efforts

at maximizing their income as evidence that Amy attempted to repay her loans.  The Bankruptcy

Court did place too much weight on Joseph's efforts when considering Amy's discharge.  Joseph's

efforts in making some payments and maximizing his income cannot be relied upon when addressing

13

Amy's good faith efforts.  In conclusion, Amy's failure to make any payment on her student loan debt and her failure to seek a reduced payment plan through the William D. Ford Program demonstrate a lack of good faith.

The Court is sympathetic to the Pratts' situation.  It is clear that Amy Pratt's hardship is real; however, it is not 'undue,' and therefore the Court cannot discharge her obligation to repay her student loans.

**Conclusion**

Accordingly, for the reasons given above, the Bankruptcy's Court final order discharging Amy Pratt from her debt to ECMC is REVERSED.

It is so ORDERED.

Signed this 26th day of March, 2007.


JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE


14